UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUFFOLK, SS.                                              C.A. No. 1:20-CV-12153-PBS

| | |
|---|---|
| **AMERICAN HOME ASSURANCE COMPANY**, as subrogee and assignee of the Massachusetts Port Authority<br><br>　　　**Plaintiff**<br><br>**v.**<br><br>**M/V ONE HELSINKI f/k/a HELSINKI BRIDGE, IMO NO. 9588081**, her engines, tackle, equipment, appurtenances, etc., *in rem*,<br><br>**and**<br><br>**DAISY SHIP HOLDING S.A., K LINE SHIP MANAGEMENT (SINGAPORE) PTE LTD., BOSTON LINE & SERVICE CO., INC.,** and **MICHAEL DUARTE,** *in personam*,<br><br>　　　**Defendants** | **DEFENDANT, MICHAEL DUARTE'S ANSWER COUNTERCLAIM and CROSS CLAIMS TO PLAINTIFF'S VERIFIED COMPLAINT IN ADMIRALTY** |

NOW COMES Michael Duarte ("Capt. Duarte"), Defendant in the above-captioned action, and answers the Plaintiff's complaint as follows:

1. Paragraph 1 is an allegation of jurisdiction and requires no response from Capt. Duarte.

## Parties

2. Denied on insufficient information.

3. Denied on insufficient information.

4. Denied on insufficient information.

5. Denied on insufficient information.

6. Admitted except as to Apartment 2, which is denied.

7. Denied on insufficient information.

## Jurisdiction

8. Admitted

9. Admitted

## Facts

10. Denied on insufficient information.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted on information and belief.

16. Admitted on information and belief, but in further answering, Capt. Duarte states that he did not learn about this until December 6, 2017, when he returned to the ship.

17. Admitted on information and belief, but in further answering, Capt. Duarte states that he did not learn about this until December 6, 2017, when he returned to the ship.

18. Admitted on information and belief, but in further answering, Capt. Duarte states that he did not learn about this until December 6, 2017, when he returned to the ship.

19. Admitted on information and belief, but in further answering, Capt. Duarte states that he did not learn about this until December 6, 2017, when he returned to the ship.

20. Denied on insufficient information.

21. Denied on insufficient information.

## COUNT I  MARITIME LIEN
### (Helsinki Bridge)

22 -33.  Paragraphs 22-33 are not addressed to Capt. Duarte and as such require no response from him. To the extent that a further response is required, Capt. Duarte denies all allegations in paragraphs 22-33.

## COUNT II – NEGLIGENCE
### (Daisy Ship Holding, S.A.)

34-40.  Paragraphs 34-40 are not addressed to Capt. Duarte and as such require no response from him.  To the extent that a further response is required, Capt. Duarte denies all allegations in paragraphs 34-40.

## COUNT III- NEGLIGENCE
### (K Line Ship Management (Singapore) PTE Ltd.)

41-47.  Paragraphs 41-47 are not addressed to Capt. Duarte and as such require no response from him. To the extent that a further response is required, Capt. Duarte denies all allegations in paragraphs 41-47.

## COUNT IV – NEGLIGENCE
### (Michael Duarte)

48. Capt. Duarte repeats his responses to paragraphs 1-47 and incorporates the same herewith.
49. Denied as requiring a conclusion of law.
50. Denied.

51. Denied.

52. Denied.

53. Denied on insufficient information.

54. Denied on insufficient information.

## COUNT V – NEGLIGENCE
### (Boston Line & Service)

55-61. Paragraphs 55-61 are not addressed to Capt. Duarte as such require no response from him. To the extent that ta further response is required, Capt. Duarte denies all allegations in paragraphs 55-61.

## DEFENSES

1. The Plaintiff has failed to state a claim for which relief can be granted and the Complaint should be dismissed according to FRCP 12 (b)(6).

2. The Complaint should be dismissed for failure of the Plaintiff to file within the applicable statute of limitations.

3. The Complaint should be dismissed on the grounds of Laches.

4. Capt. Duarte was at all relevant times not negligent and was at all times in the exercise of due care.

5. Capt. Duarte breached no duty owed to the Plaintiff.

6. The damages about which the Plaintiff complains were the sole and proximate fault of Massachusetts Port Authority for breaching its duty to provide a safe berth.

7. The damages about which the Plaintiff complains were the sole and proximate fault of Massachusetts Port Authority for failure to give notice of the unsafe and defective condition of its berth.

8. The damages about which the Plaintiff complains were the sole and proximate fault of Massachusetts Port Authority and its sub-contractors for failure to ensure proper moorings for a vessel the size and configuration of HELSINKI BRIDGE remained available during pier construction.

9. The damages about which the Plaintiff complains were the sole and proximate fault of Boston Line and Service Co., Inc., for failure of its employees to perform their duties in a workmanlike manner.

10. The Defendant Boston Line & Service Co. warranted to HELSINKI BRIDGE and to Capt. Duarte that the services of its professional line handlers would be carried out in a workmanlike manner.

11. The Defendant Boston Line & Service Co. was negligent for providing line professional line handlers who placed too many lines on one bollard, a practice they knew or should have known was unsafe for a ship with the size and configuration of HELSINKI BRIDGE.

12. The Defendant Boston Line & Service Co. was negligent for providing professional line handlers who failed to inform or warn HELSINKI BRIDGE of an unsafe condition about which they knew or should have known, namely that there was only one bollard available for all of HELSINKI BRIDGE's head lines.

13. The damages about which the Plaintiff complains were the sole and proximate fault of the negligence of defendant Boston Line & Service Co.

14. The damages about which the plaintiff complains were the sole and proximate fault of Boston Line & Service Co. for breach of its duty of workmanlike performance.

15. The Pilotage services provided to the vessel HELSINKI BRIDGE by Capt. Duarte on December 5, 2017 were performed under the terms of a written agreement, executed by the authorized vessel representative, and containing a Pilotage Clause; and under the terms of the Pilotage Clause, Capt. Duarte was a servant of the vessel and/or its owners and/or its operators and was not liable for any damages resulting therefrom.

WHEREFORE the Defendant Capt. Michael Duarte respectfully requests that this Honorable Court DISMISS the Plaintiff's claims against him, with prejudice, and with an award of costs and reasonable attorneys' fees as may be allowable by law.

## **COUNTERCLAIMS AND CROSSCLAIMS**

### **Facts**

1. The plaintiff American Home Assurance Co., as subrogee and assignee of Massachusetts Port Authority, succeeds to and was assigned the rights and liabilities of Massachusetts Port Authority.

2. On December 5, 2017, Massachusetts Port Authority invited the M/V HELSINKI BRIDGE to berth at its dock at the Conley Container Terminal knowing its size and configuration.

3. On December 5, 2017, Massachusetts Port Authority had actual knowledge or notice of the berthing needs at Conley Container Terminal from previous port visits of ships the size and configuration of HELSINKI BRIDGE.

4. On December 5, 2017, Massachusetts Port Authority knew or should have known the berthing needs of a vessel the size and configuration of HELSINKI BRIDGE.

5. On December 5, 2017, Capt. Duarte provided docking pilot services to the container ship M/V HELSINKI BRIDGE as it was docking at a Massachusetts Port Authority owned or operated dock at the Conley Container Terminal in South Boston.

6. On December 5, 2017, prior to providing docking pilot services to M/V HELSINKI BRIDGE, the duly authorized representative of HELSINKI BRIDGE signed a written agreement ("Agreement") containing a Pilotage Clause. A true copy of the said Agreement with Pilotage Clause is affixed herewith as Exhibit A.

7. On December 5, 2017, Capt. Duarte held a Master-Pilot conference with the master of HELSINKI BRIDGE in which he advised the master of high wind warnings and recommended that the master pass over two extra mooring lines to secure the ship in the event of high winds.

8. The master of HELSINKI BRIDGE concurred with Capt. Duarte's recommendation for two extra mooring lines, and ordered two extra mooring lines passed over to the line handlers on the dock.

9. Consistent with prior custom and practice in the port of Boston, Capt. Duarte did not advise the master of HELSINKI BRIDGE where to place the ship's mooring lines as that determination was properly made by ship's personnel who possessed working knowledge of the configuration of their vessel's mooring gear and whose duty it was to secure the vessel to the dock, working in concert with the professional line handlers ashore.

10. On December 5, 2017, Massachusetts Port Authority was negligent in maintaining its dock in a safe condition by failing to provide a sufficient number of usable bollards to safely berth a ship the size and configuration of HELSINKI BRIDGE.

11. On December 5, 2017, Massachusetts Port Authority was negligent in maintaining its dock in a safe condition by failing to provide a sufficient number of usable bollards to safely berth a ship the size and configuration of HELSINKI BRIDGE in reasonably foreseeable seasonal and high wind conditions.

12. On December 5, 2017, Massachusetts Port Authority was negligent in maintaining its dock in a safe condition by failing to provide a sufficient number of usable bollards of necessary construction and strength to safely berth a ship the size and configuration of HELSINKI BRIDGE.

13. On December 5, 2017, Massachusetts Port Authority was negligent for failing to warn HELSINKI BRIDGE and Capt. Duarte of the unsafe, defective and unsuitable condition of its dock to receive and safely berth a vessel of the size and configuration of HELSINKI BRIDGE.

14. On December 5, 2017, Massachusetts Port Authority and its sub-contractors were negligent for failure to ensure proper moorings for a vessel the size and configuration of HELSINKI BRIDGE remained available during pier construction.

15. On December 5, 2017, Massachusetts Port Authority, as owner and/or operator of Conley Container Terminal, warranted to HELSINKI BRIDGE and to Capt. Duarte that its berth at Conley Container Terminal would be safe for a vessel the size and configuration of HELSINKI BRIDGE.

16. On December 5, 2017, Boston Line & Service Co. provided professional line handling services to tie up HELSINKI BRIDGE at Conley Container Terminal.

17. On December 5, 2017, Boston Line & Service Co. warranted to HELSINKI BRIDGE and to Capt. Duarte that it would perform its line handling services in a professional and workmanlike manner.

18. On December 5, 2017, Boston Line & Service Co. line handlers breached the warranty of workmanlike performance by placing all of HELSINKI BRIDGE's head lines over one bollard.

19. On December 5, 2017, Boston Line & Service Co. owed HELSINKI BRIDGE and Capt. Duarte a duty to inform and warn them if its line handlers encountered a defective or unsafe condition of the dock preventing them from performing their line handling services in a professional and workmanlike manner.

20. On December 5, 2017, Boston Line & Service Co. line handlers were negligent and breached the warranty of workmanlike performance by failing to inform or warn HELSINKI BRIDGE that all its head lines had been placed over one bollard.

## **COUNTERCLAIMS**

### **COUNT I – CONTRIBUTION**
**(American Home Assurance Company)**

21. Capt. Duarte repeats and incorporates paragraphs 1-20 herewith.

22. On December 5, 2017, Massachusetts Port Authority was negligent and its negligence contributed to its alleged damages.

23. If Capt. Duarte was negligent, which is denied, Massachusetts Port Authority was also negligent and any award granted to the plaintiff must be reduced by the proportion of fault attributable to Massachusetts Port Authority.

WHEREFORE Capt. Duarte respectfully requests that this Honorable Court reduce any award of damages against Capt. Duarte by the proportion of fault attributable to Massachusetts Port Authority.

## COUNT II – BREACH OF WARRANTY OF SAFE BERTH
### (American Home Assurance Company)

24. Capt. Duarte repeats and incorporates paragraphs 1-20 herewith.

25. On December 5, 2017, Massachusetts Port Authority breached its warranty of a safe berth owed to HELSINKI BRIDGE and to Capt. Duarte.

26. As a result of its breach of its warranty of a safe berth, HELSINKI BRIDGE and Capt. Duarte will suffer damages.

WHEREFORE, Capt. Duarte respectfully requests that this Honorable Court reduce any judgment against Capt. Duarte by the proportion of fault attributable to Massachusetts Port Authority.

## CROSSCLAIMS

## COUNT I – CONTRACT-BASED DEFENSE AND INDEMNITY
### (Daisy Ship Holdings, S.A.)

27. Capt. Duarte repeats and incorporates paragraphs 1-20 herewith.

28. It is alleged that the Defendant Daisy Ship Holdings, S.A. was, at all times relevant hereto, a Panama company and the registered owner of HELSINKI BRIDGE.

29. The Agreement signed by the authorized representative of HELSINKI BRIDGE was a valid maritime contract enforceable against Daisy Ship Holdings. S.A.

30. By virtue of the Pilotage Clause in the Agreement between Capt. Duarte and HELSINKI BRIDGE, the defendant Daisy Ship Holdings, S.A. Capt. Duarte was a servant of Daisy Ship Holdings, S. A., and Daisy Ship Holdings, S.A. therefore owes Capt. Duarte a contract-based defense and indemnity for any judgment rendered against him.

WHEREFORE, Capt. Duarte respectfully requests that this Honorable Court find that the Defendant Daisy Ship Holdings. S.A. owes to him a contract-based defense and indemnity for any judgment rendered against him.

## COUNT II – DEFENSE AND INDEMNITY
### (K Line Ship Management (Singapore) Pte., Ltd)

31. Capt. Duarte repeats and incorporates paragraphs 1-20 herewith.

32. It is alleged that the Defendant K Line Ship Management (Singapore) Pte., Ltd. was at all times relevant hereto, a Singapore company that served as the operator and/or manager of HELSINKI BRIDGE.

33. The Agreement signed by the authorized representative of HELSINKI BRIDGE was a valid maritime contract enforceable against K Line Ship Management (Singapore), Pte. Ltd.

34. By virtue of the Pilotage Clause in the Agreement between Capt. Duarte and HELSINKI BRIDGE, the Defendant K Line Ship Management (Singapore) Pte., Ltd., Capt. Duarte was a servant of K Line Ship Management (Singapore) Pty., Ltd, and K Line Ship Management (Singapore) Pte., Ltd. owes to Capt. Duarte a contract-based defense and indemnity for any judgment rendered against him.

WHEREFORE, Capt. Duarte respectfully requests that this Honorable Court find that the Defendant K Line Ship Management (Singapore) Pte., Ltd. owes to him a contract-based defense and indemnity for any judgment rendered against him.

## COUNT III – CONTRIBUTION
## (Boston Line & Service Co. Inc.)

35. Capt. Duarte repeats and incorporates paragraphs 1-20 herewith.

36. On December 5, 2017, Boston Line & Service Co., Inc. was negligent and its negligence contributed to the Plaintiff's alleged damages.

37. If Capt. Duarte was negligent, which is denied, Boston Line & Service Co., Inc. was also negligent and any award granted to the plaintiff must be reduced by the proportion of fault attributable to Boston Line & Service Co., Inc.

WHEREFORE Capt. Duarte respectfully requests that this Honorable Court reduce any award of damages against Capt. Duarte by the proportion of fault attributable to Boston Line & Service Co., Inc.

MICHAEL DUARTE

By his attorney,

/s/William Hewig, III
William Hewig, III (BBO# 541910)
KP Law, P.C.
101 Arch Street
12th Floor
Boston, MA  02110-1109
Phone (617) 556-0007
Email:  whewig@k-plaw.com

Date:  February 8, 2021

### CERTIFICATE OF SERVICE

I, William Hewig, certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically. /s/ William Hewig

#743925v3/60257/0568