## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
AMERICAN HOME ASSURANCE COMPANY     )
as subrogee and assignee of the     )
Massachusetts Port Authority,       )
                                    )
                  Plaintiff,        )
                                    )        Civil Action
v.                                  )        No. 20-12153-PBS
                                    )
M/V ONE HELSINKI f/k/a HELSINKI     )
BRIDGE, IMO NO. 9588081, her        )
engines, tackle, equipment,         )
appurtenances, etc., in rem,        )
                                    )
and                                 )
                                    )
DAISY SHIP HOLDING S.A., K LINE     )
SHIP MANAGEMENT (SINGAPORE) PTE     )
LTD.,BOSTON LINE & SERVICE CO.,     )
INC., and MICHAEL DUARTE,           )
in personam,                        )
                                    )
                  Defendants.       )
_____   )

## MEMORANDUM AND ORDER

July 1, 2021

Saris, D.J.

## INTRODUCTION

Plaintiff American Home Assurance Co. insures the
Massachusetts Port Authority ("Massport"), including the Port of
Boston.  In 2017, a containership called the M/V One Helsinki
(formerly known as "the Helsinki Bridge") docked in the Port of
Boston.  The ship's mooring came loose, and the vessel collided
with a nearby terminal ("the incident").  Plaintiff indemnified

Massport for its losses.  It now seeks to recover from various defendants allegedly involved in the incident.

Defendants Daisy Ship Holding S.A. ("DSH") and K Line Ship Management (Singapore) PTE Ltd. ("KLSM")—the owner and operator of the Helsinki Bridge, respectively—have moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss the actions against them for lack of personal jurisdiction.  For the reasons set forth below, I **ALLOW** the motions to dismiss by DSH and KLSM (Dkt. 33; Dkt. 37).

## I.   BACKGROUND

The following facts are drawn from the complaint and the parties' exhibits.  "[A] district court may go beyond the four corners of the pleadings and consider materials presented in support of a motion to dismiss for lack of in personam jurisdiction." Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993).

### A.   The Parties

Plaintiff is a New York based corporation.  The insurance coverage provided by Plaintiff to Massport includes the Paul W. Conley Container Terminal ("Conley Terminal") and the Raymond L. Flynn Black Falcon Cruise Terminal ("Black Falcon Terminal") in the Port of Boston.

DSH is a Panama company and the registered owner of the Helsinki Bridge.  In April 2012, DSH chartered the Helsinki Bridge

to a Japanese corporation, KLB3287 Shipping S.A. ("KLB3287"), through a bareboat chartering agreement.[1]   The agreement was negotiated in Panama and Japan and was governed by the laws of Japan.

Also in April 2012, KLSM (a Singapore company) entered into a vessel services agreement with KLB3287.   The services agreement was negotiated in Panama and Singapore and is governed by the laws of Japan.   Pursuant to this agreement, KLSM provided the Helsinki Bridge with its crew, purchased stores and equipment, and provided technical maintenance.   The agreement specifically stated that KLSM would provide "suitably qualified Crew for the Vessel" and "competent personnel to supervise the maintenance and general efficiency of the Vessel."   Dkt. 73-1 at 4, 7.   KLSM also agreed to "train[] . . . the Crew and supervis[e] their efficiency," Dkt. 73-1 at 4, and "not do or permit to be done anything which might cause any breach or infringement of the laws and regulations of the Vessel's flag, or of the places where she trades."   Dkt. 73-1 at 13.

B.   **The Incident**

---

[1] A bareboat charterer, also known as a demise charterer, is "one who contracts for the vessel itself and assumes exclusive possession, control, command and navigation thereof for a specified period."   McAleer v. Smith, 57 F.3d 109, 112 (1st Cir. 1995) (quoting Stephenson v. Star-Kist Caribe, Inc., 598 F.2d 676, 679 (1st Cir. 1979)).

On or about December 5, 2017, the Helsinki Bridge arrived at the Boston Harbor.  Defendant Michael Duarte, the docking pilot, boarded the Helsinki Bridge and delivered the ship to its berth at the Conley Terminal.  Duarte, along with the ship's master, was aware that high winds were forecasted.  The Helsinki Bridge's mooring lines were thrown to employees of Boston Line, a Massachusetts corporation.  The Boston Line employees then secured the ship to the dock.  They secured five head lines on the bow of the ship to a single bollard and two or three lines to the other bollards.

After 12:00 a.m. on December 6, 2017, high winds arrived, and the bollard secured by five lines broke.  As the bow of the Helsinki Bridge drifted away from the dock, the other lines attached to the ship also broke.  The bow of the Helsinki Bridge collided with the pier of the Black Falcon Terminal.  Massport suffered property damage and other damages as a result of the incident, and Plaintiff indemnified Massport for its losses pursuant to its insurance contract.  Plaintiff asserts claims in rem against the Helsinki Bridge and has secured a Letter of Undertaking against the vessel in the amount of $950,000.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss a lawsuit when it lacks personal jurisdiction

over the defendant.  When a court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the court must apply the "prima facie" standard of review.  United States v. Swiss Am. Bank., Ltd., 274 F.3d 610, 618 (1st Cir. 2001). "Under that standard, 'plaintiff[s] ultimately bear[] the burden of persuading the court that jurisdiction exists," and the court must take "specific facts affirmatively alleged by the plaintiff[s] as true . . . and construe them in the light most congenial to the plaintiff['s] jurisdictional claim." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (alterations in original) (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

There are two forms of personal jurisdiction: general and specific.  Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994). General jurisdiction is not argued here.  Federal courts may assert specific personal jurisdiction over a defendant if permitted by both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  Bluetarp Fin., Inc. v. Matrix Const. Co., Inc., 709 F.3d 72, 79 (1st Cir. 2013).  Massachusetts' long-arm statute authorizes personal jurisdiction over a defendant

> who acts directly or by an agent, as to a cause of action in law or equity arising from the [defendant's]
> (a)  transacting any business in this commonwealth;
> (b)  contracting to supply services or things in this commonwealth;
> (c)  causing tortious injury by an act or omission in this commonwealth . . .

5

Mass. Gen. Laws ch. 223A, § 3.

Even if the Massachusetts long-arm statute does not apply to DSH and KLSM, this Court may also base a finding of jurisdiction on Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Rule 4(k)(2) provides that

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A)  the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B)  exercising jurisdiction is consistent with the United States Constitution and laws.

The Due Process Clause of the Fourteenth Amendment requires that an out-of-state defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

### III. **DISCUSSION**

### I. **Long-arm Statute and Rule 4(k)(2)**

Defendants DSH and KLSM both move to dismiss Plaintiff's action against them for lack of personal jurisdiction.  They contend that no jurisdiction exists under the Commonwealth's long-arm statute.  Defendants each argue that they had no possession, control, and/or operation of the Helsinki Bridge, and they contend that they did not direct the vessel to enter Massport.  DSH specifically argues that it lost possession over the ship as a

result of the chartering agreement.  Defendants further contend that they do not transact any business or contract to supply services or things or have any business dealings in the United States.  They point out that they are not registered with any state in the United States as a foreign corporation and that they do not have bank accounts in the state.  Finally, they assert that they do not own or operate any vessels in Massachusetts and that they have no interest in property within the state.

Plaintiff argues that several of the provisions of the Massachusetts long-arm statute apply to DSH and KLSM.  In particular, Plaintiff argues that Defendants "caus[ed] tortious injury by an act or omission in this commonwealth."  See Mass. Gen. Laws ch. 223A, § 3(c).  I conclude that § 3(c) applies to KLSM because Plaintiff alleges that the KLSM crew was negligent in their use of the Conley Terminal and that they failed to adequately secure the ship in its berth and take adequate precautions in preparation for the wind conditions.

The application of the long-arm statute to DSH appears to be more tenuous.  DSH did not expressly contract to provide any services in Massachusetts because the Helsinki Bridge was supplied to the charterer overseas.  See Droukas v. Divers Training Acad., Inc., 376 N.E.2d 548, 553 (Mass. 1978) (explaining that, in interpreting Mass. Gen. Laws ch. 223A, § 3(b), courts look "to the place where the services or things are to be supplied").  DSH has

not transacted any business in the state because the presence of the Helsinki Bridge in the Commonwealth appears to have been at the direction of the third-party charterer and was not foreseeable to DSH.  See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112–13 (1st Cir. 1997) ("The 'transacting business' test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party, with a view to determining whether the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable.") (cleaned up).  And Plaintiff has not alleged that DSH had any role in docking the vessel, which undermines any argument that DSH caused tortious injury in the Commonwealth.

I conclude, however, that even if no provision of the Massachusetts long-arm statute applies to DSH, the first provision of Rule 4(k)(2) would be satisfied.  DSH contends that it has "no contacts or relations whatever . . . with the United States of America."  Dkt. 38 at 7.  Based on this assertion, DSH would not be "subject to jurisdiction in any state's courts of general jurisdiction."  Fed. R. Civ. P. 4(k)(2); see also Fortis Corp. Ins. v. Viken Ship Mgmt., 450 F.3d 214, 217–18 (6th Cir. 2006) (basing specific jurisdiction over the owner and operator of a chartered ship on Rule 4(k)(2)); World Tanker Carriers Corp. v. M/V Ya Mawlaya, 99 F.3d 717, 722 (5th Cir. 1996) (concluding that admiralty cases constitute federal law under Rule 4(k)(2)).  The

remaining question for both parties is therefore whether exercising jurisdiction is consistent with the United States Constitution.

## II.   Due Process Clause

When evaluating whether specific jurisdiction exists under the Constitution, Courts must consider "(1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable, and (3) whether the exercise of jurisdiction is reasonable." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (cleaned up).  "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

### A.   Purposeful Availment

I turn first to the question of whether DSH and KLSM purposefully availed themselves of the privilege of conducting activities in Massachusetts.  The purposeful-availment requirement "ensures that jurisdiction is not based on merely random, isolated or fortuitous contacts with the forum state." Adelson v. Hananel,

510 F.3d 43, 50 (1st Cir. 2007) (cleaned up).  "In determining whether the purposeful availment condition is satisfied, [the Court's] 'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction."  Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016).  Therefore, "[t]he contacts must be voluntary and not based on the unilateral actions of another party."  Adelson, 510 F.3d at 50.  The defendant's contacts also must be "such that he could reasonably anticipate being haled into court" in the forum state. Id. (cleaned up).

The caselaw suggests that whether the presence of the Helsinki Bridge and the KLSM crew in Massachusetts was voluntary and foreseeable depends in part on whether DSH and KLSM contracted with the charterer to enter the state.  In Fortis Corp., the charter agreement signed by the defendants specifically mentioned that the vessel was equipped to travel through the Great Lakes and was "suitable for Toledo."  450 F.3d at 217.  The Sixth Circuit relied on these facts in concluding that the purposeful availment prong was satisfied. Id. at 221–22; see also Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY, 242 F.3d 322, 324 (5th Cir. 2001) (concluding that the call of a shipping vessel in Texas was not "merely 'fortuitous'" where "Houston was the specified destination in this contract").  The court in Asarco, Inc. v. Glenara, Ltd.,

912 F.2d 784 (5th Cir. 1990), on the other hand, specifically noted that no contract stipulated that the owner and manager would deliver the cargo to Louisiana when it determined that it lacked jurisdiction over those parties.  Id. at 787.

Here, Plaintiff has submitted no evidence that the agreements formed between DSH and KLSM specified that the vessel was bound for Massachusetts or the United States.  DSH, moreover, appears to have relinquished all control over the Helsinki Bridge's destinations by virtue of the charter agreement it had signed, which is designated as a "Standard Bareboat Charter."  Dkt. 73-2 at 6.  This is because a bareboat charter is "tantamount to, though just short of, an outright transfer of ownership."  McAleer, 57 F.3d at 113 (quoting Guzman v. Pichirilo, 369 U.S. 698, 699–700 (1962)).  Under the terms of its agreement with KLSM, KLB3287 therefore "assume[d] exclusive possession, control, command and navigation [of the Helsinki Bridge] for a specified period."  See id. at 112 (quoting Stephenson, 598 F.2d at 679).  The contract signed by DSH, which states that "the Owners have agreed to let and the Charterers have agreed to hire the Vessel," Dkt. 73-2 at 6, does not appear to contain any provision allowing DSH to exert control over the vessel's destination or indicating in any way that the vessel was destined for Massachusetts.  DSH cannot be said to have voluntarily entered the Commonwealth.

Nor was the Helsinki Bridge's presence in the Commonwealth foreseeable to DSH. Plaintiff alleges that "the Helsinki Bridge is apparently frequently sent to port in Boston." Dkt. 56 at 13. But Plaintiff also alleges that the Helsinki Bridge has made port in the United States at least 18 times since 2012. In Fortis Corp., by contrast, there was evidence that the defendants' vessels had made over one hundred calls to Great Lakes ports in during the preceding 5-year period. 450 F.3d at 216. Plaintiff has not shown that DSH's in-state contacts represent a purposeful availment of the privilege of conducting activities in Massachusetts.

Whether the purposeful availment condition is satisfied for KLSM is a somewhat closer question. By contract, KLSM was responsible for training the Helsinki Bridge's crew and providing the ship's Master. KLSM also agreed generally to "not do or permit to be done anything which might case any breach or infringement of the laws and regulations of the Vessel's flag, or of the places where she trades." Dkt. 73-1 at 13.

At the same time, however, the weight of the caselaw cuts against a finding that the purposeful availment condition was satisfied for KLSM. In In re Angeln GmBH & Co. KG, 510 F. App'x 90 (2d Cir. 2013), for instance, the Second Circuit concluded that a vessel manager did not purposefully avail itself of the privilege of conducting business in the forum state where "visits made to the United States ports by . . . vessels [managed by the defendant]

were done at the direction of the ship's charterers." Id. at 92.
It did so based on the principal that "unilateral activities of
third parties—[including] charterers—cannot, in themselves satisfy
the requirement of contact with the forum." Id. (quoting Porina
v. Marward Shipping Co., 521 F.3d 122, 128 (2d Cir. 2008))
(alternation in original); see also Asarco, 912 F.2d at 786
(holding that no specific jurisdiction existed over manager of
vessel because the charterer controlled the vessel's destination);
Cevhertas Deniz Nakliyati Anonim Sirketi, A.S. v. Niederelbe
Schiffartgesell GMBH Buxtenude, No. 90 CIV. 6829 (KC), 1991 WL
123951, at *7 (S.D.N.Y. June 22, 1991) (concluding that it was not
foreseeable that a ship manager would be called to port in the
forum state where the manager did "not determine where the ships
travel or what cargo they transport" and "merely provide[d], from
its base of operations in Germany, for the ships' maintenance,
insurance, and crew").  The conclusion of the court in Angeln GmBH
& Co. is consistent with the law of the First Circuit, which
provides that "[t]he contacts must . . . not [be] based on the
unilateral actions of another party." Adelson, 510 F.3d at 50.

     Although the Sixth Circuit in Fortis Corp. found personal
jurisdiction with respect to a ship operator, it did so in large
part because "defendants rigged their vessels to ship products to
the Great Lakes ports, including Toledo," as discussed above.  450

F.3d at 222.   No similar provisions existed in the agreement between KLSM and KLB3287.

Finally, Boston Line alleges that KLSM's fleet of vessels has visited United States ports on over 200 occasions.   But Boston Line has not shown that KLSM's vessels visited Massachusetts with any frequency, and the purposeful-availment requirement is not satisfied with regard to the Commonwealth.

Even if this Court were to consider KLSM's contacts with the United States as a whole under Rule 4(k)(2), the requirements of the due process clause would not be satisfied for three reasons. First, the declaration submitted by Boston Line shows that the calls made by KLSM's fleet were made over at least a 20-year period.   See Dkt. 74 ¶ 43 (stating that a vessel in KLSM's fleet had made at least 46 calls to the United States since 2000).   The calls made by members of the KLSM fleet were not frequent enough to show that KLSM could foreseeably be haled into court in the United States.   Second, the contract between KLSM and the charterer made no mention of the United States as a potential destination of the Helsinki Bridge.   Third, Boston Line's argument about the number of calls does not address the underlying problem that the calls were presumably made at the direction of third-party charterers and cannot be considered voluntary.   I note that the Court in Asarco considered and rejected a similar argument about

the manager of a vessel in part because the vessel "lacked control over where the vessels would make port."  912 F.2d at 787.

Having concluded that the purposeful availment condition is not satisfied for DSH and KLSM, I determine that this Court lacks personal jurisdiction over the two defendants.  See Phillips Exeter Acad., 196 F.3d at 288 (explaining that all three elements of the three-step Constitutional analysis must be met to support a finding of specific jurisdiction).

### ORDER

For the reasons set forth above, I **ALLOW** the motions to dismiss by DSH and KLSM (Dkt. 33; Dkt. 37).


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge